**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

DIANA L. FERRO,

                                Plaintiff,

    v.                                          No. 05-CV-48
                                                      (GLS/DRH)

COMMISSIONER OF SOCIAL SECURITY,

                                Defendant.

---

**APPEARANCES:**                           **OF COUNSEL:**

PETER M. MARGOLIUS, ESQ.
Attorney for Plaintiff
7 Howard Street
Catskill, New York 12414

HON. GLENN T. SUDDABY              WILLIAM H. PEASE, ESQ.
United States Attorney for the          Assistant United States Attorney
   Northern District of New York
Attorney for Defendant
100 South Clinton Street
Syracuse, New York 13261-7198

**DAVID R. HOMER
U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

      Plaintiff Diana L. Ferro ("Ferro") brought this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security ("Commissioner") denying her application for benefits under the Social Security Act. Ferro moves for a finding of disability and the Commissioner cross-moves for a judgment on the pleadings. Docket Nos. 6, 12. For the reasons which follow, it is recommended that the Commissioner's

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

decision be affirmed.

## I. Procedural History

On August 23, 2002, Ferro filed an application for supplemental and disability insurance benefits pursuant to the Social Security Act, 42 U.S.C. § 401 et seq. T. 59-61, 186-88.[2] On November 5, 2002, the applications were denied. T. 42, 185. Ferro requested a hearing before an administrative law judge ("ALJ"), which was held before ALJ J. Lawson Brown on January 7, 2004. T. 28, 49. In a decision dated February 27, 2004, the ALJ held that Ferro was not entitled to disability benefits. T. 22. On July 19, 2004, Ferro filed a request for review with the Appeals Council. T. 11-13. The Appeals Council denied Ferro's request for review, thus making the ALJ's findings the final decision of the Commissioner. T. 4-6. This action followed.

## II. Contentions

Ferro contends that the Appeals Council erred when it failed to remand the case after receiving new evidence establishing her disability. The Commissioner contends that there was substantial evidence to support the determination that Ferro was not disabled.

## III. Facts

Ferro is currently forty-six years old and has a high school education. T. 59, 71.

---

[2] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. Docket No. 5.

Ferro previously worked as a waitress. T. 29, 66. Ferro alleges that she became disabled on August 15, 2002 due to severe back pain. T. 18.

### IV. Standard of Review

### A. Disability Criteria

A claimant seeking disability benefits must establish that "he [or she] is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2003). In addition, the claimant's impairments must be of such severity that he or she is not able to do previous work or any other substantial gainful work considering the claimant's age, education, and work experience, regardless of whether such work exists in the immediate area, whether a specific job vacancy exists, or whether the claimant would be hired if he or she applied for work. 42 U.S.C. § 1382c(a)(3)(B) (2003).

The Commissioner uses a five-step process, set forth in 20 C.F.R. § 416.920, to evaluate SSI disability claims:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he [or she] is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his [or her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is

> afflicted with a 'listed' impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work. Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); see 20 C.F.R. § 416.920 (2003).

The plaintiff has the burden of establishing disability at the first four steps. Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 2000). However, if the plaintiff establishes that an impairment prevents him or her from performing past work, the burden then shifts to the Commissioner to determine if there is other work which the claimant could perform. Id.

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw, 221 F.3d at 131 (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000).

"In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." Prentice v. Apfel, No. 96 Civ. 851(RSP), 1998 WL 166849, at *3 (N.D.N.Y. Apr.

4

8, 1998) (citing <u>Ferraris v. Heckler</u>, 728 F.2d 582, 587 (2d Cir. 1984)).  A court, however, cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  <u>Yancey v. Apfel</u>, 145 F.3d 106, 111 (2d Cir. 1998).  If the Commissioner's finding is supported by substantial evidence, it is conclusive.  <u>Bush v. Shalala</u>, 94 F.3d 40, 45 (2d Cir. 1996).

## V.  Discussion

### A. Medical Evidence

On August 15, 2002, Ferro was involved in a motor vehicle accident and suffered severe back pain as a result.  T. 18, 30-31.  Shortly thereafter, Ferro sought treatment from Dr. Tamara Graham, a chiropractor.  T. 31, 137-41.  Dr. Graham noted that Ferro complained of low back discomfort and thoracic spine pain.  T. 114.  On October 10, 2002, Dr. Graham concluded that Ferro was "totally disabled at this time."  T. 115.  On October 1, 2002, Ferro was examined by Dr. Marc Bergeron.  T. 109.  Dr. Bergeron noted that Ferro had a normal gait, full range of motion of the lumbar spine, and was able to walk heel-to-toe.  T. 109-10.  Dr. Bergeron concluded that except for tenderness, there were no hard or neurological findings.  T. 110-11.  Dr. Bergeron continued to treat Ferro until November 12, 2002, when he concluded that no further examinations were necessary and discharged Ferro from his care.  T. 144.

At the recommendation of Dr. Bergeron, Ferro began physical therapy with Dennis Ostrander ("Ostrander"), a physical therapist.  T. 120-26.  Ostrander noted that Ferro's rehabilitation potential was good and that her condition was improving.  T. 121, 126.  Ferro

also began seeing Dr. Robert Schneider, her family physician. T. 134. Dr. Schneider concluded that Ferro suffered from chronic pain and lumbago and prescribed various medications to treat the pain. T. 134, 159, 172. On June 3, 2003, Ferro was examined by Dr. Betsy Fuchs. T. 176-79. Dr. Fuchs noted that Ferro suffered from no acute distress but that she complained of total body pain. Id. Dr. Fuchs recommended that an anti-inflammatory be used to treat Ferro's pain. T. 179.

### B. Refusal to Remand

Ferro contends that the Appeals Council erred when it failed to remand the case to clarify the medical source statement of Dr. Graham, her chiropractor. Ferro also contends that the new evidence provided by her treating physician, Dr. Schneider, requires remand to determine the extent of her severe psychological problems. To prevail on this contention, Ferro must establish, inter alia, that the clarification would reasonably have altered the outcome of her application. See Bosmond v. Apfel, No. 97 Civ. 4109(RPP), 1998 WL 851508, at * 12 (S.D.N.Y. Dec. 8, 1998).

Shortly after Ferro's onset date, she began receiving chiropractic adjustments from Dr. Graham. T. 137-141. On October 10, 2002, Dr. Graham determined that Ferro could lift and carry up to five pounds, stand less than two hours per day, and sit less than six hours per day. T. 116. Dr. Graham also concluded that Ferro was "totally disabled at this time." T. 115. The ALJ accorded Dr. Graham's opinion little weight because "she is a chiropractor and not an acceptable source and her opinion is not consistent [with] the overall medical evidence and is not supported by any medical acceptable treating source."

T. 19. Ferro contends that the Appeals Council should have remanded her case in order to clarify Dr. Graham's conclusions about Ferro's ability to work, especially in light of new evidence from Dr. Schneider.[3] However, even in light of this new evidence, there is substantial evidence to support the Appeals Council's decision not to remand.

In support of his finding of "not disabled," the ALJ cited the examinations of Dr. Bergeron, a treating orthopedic specialist. T. 19-20. On October 1, 2002, Dr. Bergeron examined Ferro and concluded that aside from some tenderness, there were no hard or neurological findings. T. 110-11. Dr. Bergeron noted that Ferro had full range of motion of the lumbar spine and her back showed no deformity and no spasm. T. 110. On November 11, 2002, Dr. Bergeron again examined Ferro and noted that both the bone scan and the MRI of the lumbar area were normal. T. 144. Dr. Bergeron noted that no follow-up examinations were needed and discharged Ferro from his care. T. 19-20, 144. The ALJ also cited Dr. Fuchs' examination notes that indicated that Ferro's hip x-rays were normal and that she was not a candidate for surgical intervention. T. 20, 149. Further, Ferro testified that she lived alone, walked her dog frequently, and drove a car. T. 21, 36-39. Thus, even in light of Ferro's new evidence, there exists substantial evidence to support the ALJ's analysis and determination as well as the Appeals Council decision not to remand Ferro's case in order to clarify the medical source statement of Dr. Graham. Thus, there is no reasonable likelihood that a remand would have altered the outcome. See Bosmond, 1998 WL 851508, at *12.

---

[3] After the ALJ's decision, Ferro submitted records from Dr. Schneider indicating that Ferro had very limited ability to stand, sit, lift, or function in a work setting at a consistent pace. T. 197, 199.

7

Ferro also contends that the Appeals Council should have remanded her case because the new evidence provided by Dr. Schneider raised the issue of her "severe psychological problems." Pl. Mem. of Law (Docket No. 6) at 1, 4. Such a contention requires a showing that (1) the proffered evidence is new and not merely cumulative of other evidence in the record, (2) the proffered evidence is material, and (3) good cause existed for failing to present the evidence earlier. Tirado v. Bowen, 842 F.2d 595, 597 (2d Cir. 1998).

Ferro relies on a Department of Social Services checklist that Dr. Schneider completed in which he indicated that she had a very limited ability to function in a work setting at a consistent pace and a moderately limited ability to understand instructions and maintain attention and concentration. See Pl. Mem. of Law at 4; see also T. 197, 199. However, Ferro never alleged any severe psychological problems in her testimony or application for disability benefits. the new evidence was not, therefore, material to the claim under consideration. Further, although Ferro sought treatment for depression in July 2000, but she cancelled her appointments less than one month later, indicating that "she does not feel [the] need to come back." T. 95. Thus, the new evidence also lacks probative value. Accordingly, Ferro's contention that the Appeals Council erred when it failed to remand her case because of this new evidence is without merit.

It is recommended that the Commissioner's findings be affirmed.

## VI. Conclusion

For the reasons stated above, it is hereby

8

**RECOMMENDED** that the decision denying disability benefits be **AFFIRMED**, Ferro's motion for a finding of disability (Docket No. 6) be **DENIED**, and the Commissioner's cross-motion (Docket No. 12) be **GRANTED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85 (2d Cir. 1993) (citing Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

DATED: December 12, 2006
      Albany, New York

David R. Homer
United States Magistrate Judge